# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1025

_____

Nancy Mader, Personal Representative  *
of the Estate of Robert Mader,        *
                                      *
       Appellant,              *
                                      *   Appeal from the United States
    v.                          *   District Court for the
                                      *   District of Nebraska.
United States of America,             *
                                      *
       Appellee.               *
                                      *

_____

Submitted:  April 13, 2011
Filed:  September 7, 2011
_____

Before  RILEY, Chief Judge, WOLLMAN, BEAM, LOKEN, MURPHY, BYE, MELLOY, SMITH, COLLOTON, GRUENDER, BENTON, and SHEPHERD, Circuit Judges.

_____

BEAM, Circuit Judge, with whom RILEY, Chief Judge, WOLLMAN, LOKEN (except as to Part II), COLLOTON (except as to Part V), GRUENDER and BENTON, Circuit Judges, join.

      In this appeal concerning the Federal Tort Claims Act, we determine whether a purported personal representative may invoke the adjudicatory capacity, that is, the subject-matter jurisdiction of a United States District Court on behalf of statutory beneficiaries if, under 28 U.S.C. § 2675(a), the representative fails or refuses to first

present to the appropriate federal agency evidence of her authority to act on behalf of such beneficiaries.

## I.

### A.

"[S]overeign immunity shields the Federal Government and its agencies from suit." Fed. Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 475 (1994). If Congress so chooses, however, it may waive the United States's sovereign immunity and "prescribe the terms and conditions on which [the United States] consents to be sued, and the manner in which the suit shall be conducted." Beers v. State, 61 U.S. (20 How.) 527, 529 (1857). In 1946, Congress passed the Federal Tort Claims Act (FTCA), a limited waiver of the United States's sovereign immunity, to permit persons injured by federal-employee tortfeasors to sue the United States for damages in federal district court. Molzof ex rel. Molzof v. United States, 502 U.S. 301, 304 (1992). In relevant part, the FTCA's liability and jurisdiction-conferring language provides that federal district courts have "exclusive jurisdiction" over claims against the United States for money damages for "personal injury or death caused by the negligent or wrongful act or omission" of federal employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); see also id. § 2674. Thus, while "the extent of the United States'[s] liability under the FTCA is generally determined by reference to state law," Molzof, 502 U.S. at 305, the adjudicatory capacity over such claims is strictly limited to the various federal district courts.

In its infancy, the FTCA granted federal agencies little authority to administratively settle FTCA claims, and FTCA claimants could, at their discretion, file suit in federal district court without first subjecting their claims to agency

Appellate Case: 09-1025     Page: 2     Date Filed: 09/07/2011 Entry ID: 3826131

attention.  McNeil v. United States, 508 U.S. 106, 112 n.7 (1993).  But, in 1966, Congress amended the FTCA and established a new framework for the administrative consideration and settlement of claims.  Id.  Specifically, Congress broadened the settlement authority of agencies through the enactment of 28 U.S.C. § 2672, which provides that federal agency heads, "in accordance with regulations prescribed by the Attorney General, may consider, ascertain, adjust, determine, compromise, and settle any [FTCA] claim."  Along with § 2672, Congress enacted 28 U.S.C. § 2675(a), which provides that "[a]n [FTCA] action[1] shall not be instituted upon a claim against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency."  The Supreme Court has recognized that "[t]he most natural reading of [§ 2675(a)] indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process."  McNeil, 508 U.S. at 112.

While § 2675(a) bars suit unless a claim is first "presented" to the appropriate federal agency, the FTCA does not expressly articulate in § 2671, its definitions section, what information must be included in a properly "presented" claim.  Purportedly acting pursuant to Congress's grant of rulemaking authority in § 2672, the Attorney General promulgated 28 C.F.R. § 14.2(a) to define the presentment requirement.  Specifically, § 14.2(a) provides:

_____

[1]The 1946 version of the FTCA expressly made the Federal Rules of Civil Procedure applicable to actions against the United States.  28 U.S.C. § 932 (1946).  United States v. Reynolds, 345 U.S. 1, 6 n.10 (1953).  But, in 1948, Congress removed this express language "as unnecessary because the Rules of Civil Procedure . . . shall apply to all civil actions."  United States v. Yellow Cab Co., 340 U.S. 543, 553 n.9 (1951) (internal quotation omitted).  Note, however, that FTCA actions must be tried to a judge, not a jury.  28 U.S.C. § 2402; Buchanan v. United States, 305 F.2d 738, 740 (8th Cir. 1962).

-3-

> For purposes of the provisions of 28 U.S.C. § 2401(b),[2] 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, [1] an executed Standard Form 95 or other written notification of an incident, [2] accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and [3] the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

Notwithstanding the Attorney General's regulation, there remains judicial discord over whether § 2675(a) requires the presentation of all of the evidence listed in § 14.2(a). Specifically, courts have disagreed about whether § 2675(a) requires presentation of evidence of a representative's authority to submit a claim on behalf of the claimant. Compare Kanar v. United States, 118 F.3d 527, 530 (7th Cir. 1997) with Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776, 780 (9th Cir. 1984) (en banc).

A panel from this circuit directly addressed the evidence-of-authority issue in Lunsford v. United States, 570 F.2d 221 (8th Cir. 1977), and held that a representative must submit evidence of his authority to act on behalf of a claimant in order to satisfy § 2675(a)'s jurisdictional presentment requirement. Id. at 225-26. There, third parties attempted to present FTCA claims to a federal agency on behalf of a class of unnamed

---

[2]28 U.S.C. § 2401(b) provides:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

-4-

claimants without evidence of their authority to do so.  Id. at 224-25.  Noting that "the major reason" for § 2675(a)'s presentment requirement is to "facilitate settlement of [FTCA] cases," id. at 226 (quotations omitted), the panel concluded that the third parties "inadequately presented the claims of unnamed class members because they failed to demonstrate the existence of the necessary agency relationship." Id.  Without such evidence, reasoned the court, "the ability of the United States to negotiate a settlement is impeded."  Id. (quotation omitted).

Now, some thirty-four years after the Lunsford decision, the facts of the present case bring the evidence-of-authority issue before our en banc court.

## B.

Robert L. Mader (Mr. Mader) was treated for depression and paranoia at the Veterans Affairs (VA) Medical Center in Lincoln, Nebraska.  On August 3, 2004, approximately two months after a VA doctor altered his course of treatment, Mr. Mader died of a self-inflicted gunshot wound.  Via Standard Form 95, Nancy Mader (Ms. Mader), his widow, purporting to act as the "Personal Representative of the Estate of Robert L. Mader," sought to present a wrongful death claim to the VA on August 3, 2006, the two-year anniversary of Mr. Mader's death.  Ms. Mader's attorney signed the form and mailed it to the VA.  Although Form 95, which recites the language of 28 C.F.R. § 14.2(a), expressly required Ms. Mader to submit evidence of her authority to present the claim on behalf of the claim's statutorily designated beneficiaries,[3] no such evidence was ever presented to the VA in this case.

---

[3]Under Nebraska law, wrongful death actions may be brought for the "exclusive benefit of the widow or widower and next of kin."  Neb. Rev. Stat. § 30-810. Although not in the record below, a computer search reveals a timely published obituary for Mr. Mader which indicates that, in addition to Ms. Mader, he was survived by several children, siblings and other more remote kin.  Obituaries, The

Indeed, on August 21, 2006, the VA sent Ms. Mader's lawyer a letter requesting evidence of Ms. Mader's status as personal representative. Neither Ms. Mader nor her attorney responded to this entreaty. The VA later telephoned Ms. Mader's counsel at least four times asking for the information but, again, neither Ms. Mader nor her lawyer replied.[4] On September 19, 2007, the VA denied the claim in writing due to Ms. Mader's repeated failure to submit the required authority evidence. In the alternative, the VA denied the claim on its merits.

In March 2008, Ms. Mader–again claiming to be the personal representative of Mr. Mader's estate, and purportedly acting on behalf of statutory beneficiaries–filed a wrongful death action against the United States in federal district court under the FTCA. Upon the government's Federal Rule of Civil Procedure 12(b)(1) motion, the district court applied Lunsford and dismissed the action for want of subject-matter jurisdiction because Ms. Mader failed to present the requisite evidence of authority to the VA under 28 U.S.C. § 2675(a). Mader appealed the dismissal to a panel of this court.

A divided panel reversed the district court, holding that § 2675(a) did not require Ms. Mader to present to the VA evidence of her authority to act on behalf of the claim's beneficiaries. According to the panel majority, Lunsford's interpretation of § 2675(a)'s presentment requirement is in irreconcilable conflict with the so-called "minimal notice" interpretation of § 2675(a) articulated in Farmers State Savings Bank v. Farmers Home Administration, 866 F.2d 276 (8th Cir. 1989). In Farmers, the court

---

Independent, Aug. 6, 2004, http://www.theindependent.com/articles/2004/08/06/ obituaries/20040806-archive2.txt.

[4]Ms. Mader's attorney explained at oral argument that he did not respond to the VA because, in his experience, he did not believe the VA would settle the claim prior to suit.

-6-

explained that a claimant may satisfy the presentment requirement by submitting: (1) sufficient information for the agency to investigate the claim; and (2) the amount of damages sought.[5]  Id. at 277.  Although Lunsford was decided first (and was even approvingly cited in Farmers), the panel majority disregarded Lunsford and, instead, applied the "minimal notice" standard articulated in Farmers because it represented the "better rule."  Mader ex rel. Mader v. United States, 619 F.3d 996, 999, 1001-02 (8th Cir. 2010).  The government filed a petition for rehearing by the en banc court.

We granted the government's petition for en banc review, vacating the panel majority's opinion.  We now affirm the district court.

## II.

Before we address the parties' arguments regarding the construction of § 2675(a)'s presentment requirement, we address this circuit's "peculiar approach to conflicting prior panel opinions."  Williams v. Nat'l Football League, 598 F.3d 932, 934 (8th Cir. 2009) (Colloton, J., dissenting from denial of rehearing en banc).  "It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel."  Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002).  But, when faced with conflicting panel opinions, panels "are free to choose which line of cases to follow."  Meyer v. Schnucks Mkts., Inc., 163 F.3d 1048, 1051 (8th Cir. 1998).  Following this practice, the panel majority chose to follow Farmers instead of Lunsford, even though Lunsford was decided first.

---

[5]Notably, unlike in Lunsford, the claimant in Farmers (a bank) presented a claim on its own behalf and the evidence-of-authority question was, therefore, not at issue.  See Streu v. Dormire, 557 F.3d 960, 964 (8th Cir. 2009) ("[W]e are generally not bound by a prior panel's implicit resolution of an issue that was neither raised by the parties nor discussed by the panel.").

-7-

We definitively rule today, in accordance with the almost universal practice in other federal circuits, <u>McMellon v. United States</u>, 387 F.3d 329, 333 (4th Cir. 2004) (collecting cases), that when faced with conflicting panel opinions, the earliest opinion must be followed "as it should have controlled the subsequent panels that created the conflict." <u>T.L. ex rel. Ingram v. United States</u>, 443 F.3d 956, 960 (8th Cir. 2006). Thus, as a matter of proper appellate review, the panel majority should have applied <u>Lunsford</u>'s first-in-time interpretation of § 2675(a).  But, because the en banc court is not bound by <u>Lunsford</u>'s interpretation of § 2675(a), we now interpret the statute anew.

III.

Ms. Mader asserts that a claim is properly "presented" to the appropriate federal agency under 28 U.S.C. § 2675(a) if it includes: (1) sufficient information for the agency to investigate the claim; and (2) the amount of damages sought.  The government agrees that § 2675(a) requires such information but contends that, in addition, personal representatives must also present evidence of their authority to submit a wrongful death claim on behalf of statutory beneficiaries–the evidence Ms. Mader failed to present in this case.  We review questions of statutory interpretation de novo, which requires us to examine the text of the statute as a whole by considering its context, object, and policy.  <u>Am. Growers Ins. Co. v. Fed. Crop Ins. Corp.</u>, 532 F.3d 797, 803 (8th Cir. 2008).  Ultimately, "[o]ur objective in interpreting a federal statute is to give effect to the intent of Congress."  <u>United States v. Vig</u>, 167 F.3d 443, 447 (8th Cir. 1999).  We must also keep in mind that § 2675(a) is a condition to the United States's waiver of sovereign immunity under the FTCA, and we should not "extend the waiver beyond that which Congress intended," or "assume the authority to narrow the waiver that Congress intended."  <u>United States v. Kubrick</u>, 444 U.S. 111, 118 (1979).

-8-

As earlier noted, the FTCA does not expressly define the term "presented" under § 2675(a), but "[i]t is a fundamental canon of statutory construction that the words of a statute must be read . . . with a view to their place in the overall statutory scheme." Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989).  As discussed above, in 1966, Congress enacted §§ 2675(a) and 2672 to create a new framework for the administrative consideration and settlement of FTCA claims.  When § 2675(a) is read in light of its sister statute, it becomes readily apparent that the administrative presentment requirement serves a practical purpose–it provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit.  See McNeil, 508 U.S. at 112 ("The most natural reading of [§ 2675(a)] indicates that Congress intended to require *complete exhaustion of Executive remedies* before invocation of the judicial process."  (emphasis added)).  It naturally follows, then, that § 2675(a) requires the presentment of evidence of a personal representative's authority to act on behalf of a claim's beneficiaries, something totally essential to meaningful agency consideration.

The facts of this case demonstrate why Ms. Mader's proposed interpretation of the presentment requirement, which would excuse her failure to present such evidence-of-authority, fails to give full effect to § 2675(a)'s manifest purpose and fails to take into account the realities of the administrative consideration process contemplated in §§ 2675(a) and 2672.  Under § 2672, a federal agency may only settle or compromise an FTCA claim "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with [applicable state law]."  As mentioned above, the FTCA's liability and jurisdiction-conferring language similarly provides that federal district courts have "exclusive jurisdiction" over FTCA claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with [applicable state law]."  28 U.S.C. § 1346(b)(1); see also id. § 2674.  In Nebraska, the relevant locale here, wrongful death actions are statutorily authorized, Neb. Rev. Stat. § 30-809, but may *only* "be brought by and in the name of the [decedent's] personal representative for the exclusive benefit

-9-

of the widow or widower and next of kin."[6]  Id. § 30-810; Spradlin v. Dairyland Ins. Co., 641 N.W.2d 634, 637-38 (Neb. 2002).  Indeed, under Nebraska law, a private tortfeasor "cannot be legally liable" to a non-personal representative for the wrongful death of a decedent.  Spradlin, 641 N.W.2d at 638.

On August 12, 2004, Ms. Mader was appointed personal representative of Mr. Mader's estate in the County Court of Hall County, Nebraska.  On July 8, 2005, after administering the estate for nearly a year, Ms. Mader filed a verified statement in the County Court to informally close the estate.  Under Nebraska law, if no proceedings involving the personal representative are pending in the County Court one year after the filing of such a statement, the appointment of the personal representative terminates.  Neb. Rev. Stat. §§ 30-24,117(b), 30-2453(a).  Importantly, such termination "ends the right and power pertaining to the office of personal

---

[6]Nebraska's wrongful death statute further provides that the proceeds from a wrongful death verdict or judgment "shall be paid to and distributed among the widow or widower and next of kin in the proportion that the pecuniary loss suffered by each bears to the total pecuniary loss suffered by all such persons."  Neb. Rev. Stat. § 30-810.  Moreover, the personal representative "shall not compromise or settle a claim for damages [specified in § 30-810] until the court by which he or she was appointed shall first have consented to and approved the terms thereof."  Id.  The amounts received through settlement or judgment must be reported to the court and, if so ordered, paid to the court for distribution to the beneficiaries after a hearing.  Id.  Notice of this hearing must be given to all interested persons by publication in a legal newspaper, id., and the proceeds from a wrongful death judgment or settlement are not subject to any claims against the decedent's estate.  Id.  Interpreting these provisions, the Nebraska Supreme Court has explained that "no apparent heir or beneficiary under the wrongful death statute has any vested right to any of the proceeds recovered in said action until after a hearing has been held before the county court, and a determination made by the court as to who is entitled to receive the proceeds and how much."  Hickman v. Southwest Dairy Suppliers, Inc., 230 N.W. 2d 99, 104 (Neb. 1975).  Thus, "[i]t may well be that one who appears to be a probable recipient of benefits of a wrongful death action may turn out not to be so at all, and may not receive any of such benefits."  Id. at 105.

-10-

representative," including her right to serve in a representative capacity "in any pending or future proceeding." Id. § 30-2451. At oral argument before the en banc court, Ms. Mader's lawyer conceded for the first time that Ms. Mader's appointment as personal representative terminated sometime before she submitted the wrongful death claim to the VA, and before she filed suit against the United States in federal district court.

Thus, after five years of consideration at the administrative, trial and appellate court levels, it has only recently become clear that Ms. Mader lacked the requisite authority to file a claim with the VA or to file a wrongful death action against the United States in federal district court. This critical fact was concealed due to Ms. Mader's repeated refusal to disclose evidence of her status as personal representative to the VA.[7] Without the opportunity to review such evidence, the VA was unable to ascertain that, even if it wished to settle the statutory beneficiaries' wrongful death claim, it could not do so because Ms. Mader's state-law authority to act on behalf of the beneficiaries had expired. See 28 U.S.C. § 2672 (granting agencies authority to settle claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with [state law]"). Without such evidence, the VA also could not definitively discern that any negotiations by Ms. Mader or any

---

[7]Because there existed a question of subject-matter jurisdiction in the court below, on November 4, 2009, at the request of the panel, Ms. Mader's lawyer finally filed a copy of her "Letters of Personal Representative" with this court. At that time, Ms. Mader's lawyer also notified the panel that "there was an informal closing of the Estate by verified statement, but no discharge of the Personal Representative, on July 8, 2005." Because Ms. Mader did not include a copy of the July 8, 2005, verified statement, a member of the panel requested the document from the County Court of Hall County on November 18, 2009. That document suggested that Ms. Mader's appointment as personal representative terminated on July 8, 2006. It was only after these documents finally came to light, and after the panel majority reversed the district court, that Ms. Mader finally conceded at oral argument before the en banc court that her appointment as personal representative terminated sometime before she attempted to present a claim to the VA on August 3, 2006.

-11-

agreements with her on behalf of the claim's beneficiaries, including a release of claims, would have been ineffective.  See, e.g., Reo v. U.S. Postal Serv., 98 F.3d 73, 76, 78 (3d Cir. 1996) (holding that because parents had no state-law authority to settle their child's FTCA claim, the administrative settlement was "incomplete as a matter of state law" and the child's subsequent FTCA action was not barred).  Being ultra vires in nature, such negotiations with Ms. Mader would have improperly jeopardized the time, treasure and superintendence responsibilities of the VA.

Unfortunately, the representation problem presented in this case could easily be repeated in jurisdictions across the United States.  See McNeil, 508 U.S. at 112 ("[§ 2675(a)] governs the processing of a vast multitude of claims.").  Like Nebraska's wrongful death statute, "[a] great number of wrongful death statutes require that [a claim] must be instituted and prosecuted by the decedent's personal representative only."[8]  12 Am. Jur. Trials Wrongful Death Actions § 10.  The FTCA seemingly apprehends this common state-law requirement when it acknowledges that the United States may be liable for wrongful death "to the persons . . . *for whose benefit the action was brought*."  28 U.S.C. § 2674 (emphasis added).  In any one of these many jurisdictions, federal agencies are unable to meaningfully settle, consider, or even fully ascertain a wrongful death claim under § 2672 without first receiving evidence of the personal representative's authority to act on behalf of the claim's beneficiaries.

---

[8]Wrongful death claims, which did not exist at common law, are established, substantively and procedurally, by legislative act.  Moragne v. State Marine Lines, Inc., 398 U.S. 375, 390 (1970).  In 1846, in derogation of the common law, Lord Campbell's Act was passed in England, granting recovery to families of persons killed by certain tortious conduct.  Id. at 389.  Soon, state legislatures across the United States began to enact similar wrongful death statutes, Lorenzen v. Continental Baking Co., 141 N.W.2d 163, 168 (Neb. 1966), and now, all states have statutes permitting recovery for wrongful death.  Morange, 398 U.S. at 390.  Thus, "[t]he right to maintain an action for wrongful death . . . exists in Nebraska, as in other states, solely by statute."  Paulk v. Central Laboratory Assocs., P.C., 636 N.W.2d 170, 180 (Neb. 2001).

-12-

Similar representation problems may also extend beyond the wrongful death context.   Indeed, FTCA claims involving questions of age, competency and numerosity, among others, will often require the appointment of an agent or trustee. And, as the government pointed out at oral argument, there are currently some 500,000 FTCA claims pending in the wake of the Hurricane Katrina disaster, a number of which have representation issues.  In fact, according to the government, in some cases up to four lawyers have attempted to present FTCA claims to federal agencies on behalf of the same claimants.

Our interpretation of § 2675(a)'s presentment requirement is also buttressed by the legislative history of §§ 2675(a) and 2672.  Legislative discussions pertaining to § 2675(a) indicate that Congress enacted the provision to "require someone who [previously] ha[d] a right to go to court directly first to deal with [the appropriate] administrative agency."   Improvement of Procedures in Claims Settlement and Government Litigation: Hearing Before Subcomm. No. 2 of the H. Comm. on the Judiciary, 89th Cong. 18 (1966) (statement of William Hungate, Member, H. Comm. on the Judiciary); see also id. at 19 ("[O]ne thought is that the sovereign is waiving its immunity in connection with tort claims, and that it is not unreasonable to say that for 6 months the agency should have a crack at them.") (statement of John W. Douglas, Assistant Attorney General); S. Rep. No. 89-1327, at 2, *reprinted in* 1966 U.S.C.C.A.N. 2515, 2517 ("[Section 2675(a)] require[s] all claims to be presented to the appropriate agency for consideration and possible settlement before a court action [may] be instituted.").  And, the legislative history of § 2672 suggests that Congress intended to "grant[] the agencies of Government sufficient authority to make the administrative settlements a meaningful thing."  S. Rep. No. 89-1327, at 3.  Such history supports our conclusion that, by enacting §§ 2675(a) and 2672, Congress intended to give agencies the first opportunity to meaningfully consider and settle FTCA claims.  And, as discussed above, agencies simply cannot meaningfully

-13-

consider FTCA claims with an eye towards settlement if representatives fail to first present evidence of their authority to act on behalf of claims' beneficiaries.

For the foregoing reasons, we hold that a properly "presented" claim under § 2675(a) must include evidence of a representative's authority to act on behalf of the claim's beneficiaries under state law. The presentation of such evidence is not a pointless administrative hurdle–it is fundamental to the meaningful administrative consideration and settlement process contemplated in §§ 2675(a) and 2672. Moreover, we note that the presentation of such evidence is far from burdensome. Assuming a representative is, in fact, duly authorized to present an FTCA claim on behalf of beneficiaries under applicable state law, evidence of such authority is uniquely in the representative's possession.

We recognize that our interpretation of § 2675(a) is consistent with the Attorney General's regulation, 28 C.F.R. § 14.2(a). The parties devoted much attention in their briefs to the question of whether Congress's express grant of rulemaking authority under § 2672 authorized the Attorney General to define § 2675(a)'s presentment requirement. We are strongly inclined to think that it did. If so, the regulation is entitled to deference under <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 842-45 (1984), or, at least, <u>Skidmore v. Swift & Co.</u>, 323 U.S. 134, 140 (1944). But, in this case, there is "no occasion to defer and no point in asking what kind of deference, or how much," because § 14.2(a)'s interpretation of § 2675(a) is the interpretation "we would adopt even if there were no formal rule and we were interpreting the statute from scratch." <u>Edelman v. Lynchburg Coll.</u>, 535 U.S. 106, 114 (2002). The Attorney General's regulation is, in essence, merely a paraphrase of the inherent requirements of §§ 2675(a) and 2672.[9]

---

[9]In its opening paragraph, the dissent cryptically lays out the logic for its contrary conclusion as follows: "When a statute contains elements A and B and mentions no other elements, and a regulation arguably promulgated under the same statute expressly insists on element C, the natural inference is that it is the regulation,

-14-

not the statute, that is the source for requiring C." Post at 22. By "statute," the dissent presumably refers to § 2675(a)'s presentment requirement, and by elements "A" and "B," the dissent is apparently referring to the minimal notice standard, that is, (A) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (B) a sum-certain damages claim. And finally, by element "C," the dissent seemingly refers to the evidence-of-authority requirement. When this key is applied to decipher the dissent's opening statement, the flaws in the dissent's logic become apparent.

From the outset, the dissent fails to prove its own assertion that § 2675(a) expressly "mentions" or "contains" the minimal notice standard (elements "A" and "B"). The "written statement" requirement (element "A"), the dissent avers, is "self-explanatory" based on § 2675(a)'s plain language. Post at 25-26. But, § 2675(a) does not mention *written* presentation any more than it mentions telephonic or other verbal methods of presentation. Instead, the "written statement" requirement is gleaned from the FTCA's statute of limitations, 28 U.S.C. § 2401(b), which provides that an FTCA claim is barred "unless it is presented *in writing* to the appropriate Federal agency within two years after such claim accrues." (emphasis added). Similarly, § 2675(a) does not expressly mention the sum-certain requirement (element "B"). This requirement derives from § 2675(b)'s edict that an FTCA action "shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency," which amount is, in turn, implicit in the information necessitated by § 2672. Lunsford, 570 F.2d at 226 n.9 (explaining that the sum-certain requirement derives from §§ 2675(b) and 2672). Thus, while the dissent necessarily looks elsewhere in the FTCA to define § 2675(a)'s presentment requirement, it asserts that the court may not read § 2675(a) in light of § 2672–a fellow 1966 amendment that, together with § 2675(a), established a new framework for the administrative consideration and settlement of FTCA claims–to determine the purpose and most natural reading of the presentment requirement.

Additionally, while emphasizing that the evidence-of-authority requirement (element "C") is located in the Attorney General's regulation, 28 C.F.R. § 14.2(a), the dissent fails to mention that the minimal notice standard is *also* located in the regulation. Indeed, § 14.2(a) contains the dissent's so-called elements "A," "B," *and* "C." If the dissent's opening-paragraph logic is given full force, the "natural inference" is apparently that elements A, B, *and* C originate from the regulation and

-15-

IV.

Ms. Mader asserts that, notwithstanding our interpretation of § 2675(a)'s presentment requirement, the district court erroneously dismissed her suit under Rule 12(b)(1) because compliance with the presentment requirement is not jurisdictional. Following this logic, she contends that her failure to strictly comply with the requirement was harmless and may be excused because the VA ultimately investigated and denied the beneficiaries' claim on the merits.[10] The government contends that the

---

not the FTCA itself. But, such a conclusion disregards the "fundamental canon of statutory construction that the words of a statute must be read . . . with a view to their place in the overall statutory scheme." Davis, 489 U.S. at 809. We have properly applied this familiar canon to § 2675(a) and, having done so, we are convinced that the Attorney General's regulation is merely a paraphrase of the inherent statutory elements of claim presentation.

[10]The Supreme Court rejected a nearly identical argument in McNeil, 508 U.S. 106. There, the claimant failed to follow the edicts of § 2675(a) when he filed an FTCA suit in federal district court *before* presenting a claim to the appropriate federal agency and *before* the agency denied his claim. Id. at 111. The claimant argued that his FTCA action should nevertheless be allowed to proceed in federal district court because the agency ultimately considered and denied his claim before "substantial progress" had been made in the litigation. Id. at 110-12. The Court disagreed, concluding that "[t]he interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command" of § 2675(a). Id. at 112. To support its conclusion, the Court emphasized that each premature FTCA action "imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions. Although the burden may be slight in an individual case, [§ 2675(a)] governs the processing of a vast multitude of claims." Id. In the same vein, Ms. Mader failed to strictly comply with § 2675(a)'s requirements prior to filing suit and, therefore, her action is barred notwithstanding the VA's decision to alternatively deny her claim on the merits. See United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 660 (1947) ("It has long been settled that officers of the United States possess no power through their actions to waive an

-16-

district court properly dismissed Ms. Mader's action because strict compliance with § 2675(a) is a jurisdictional prerequisite to suit under the FTCA. We agree with the government.

We have long held that compliance with § 2675(a)'s presentment requirement is a jurisdictional precondition to filing an FTCA suit in federal district court. <u>See</u> <u>Allen v. United States</u>, 590 F.3d 541, 544 (8th Cir. 2009); <u>Lunsford</u>, 570 F.2d at 224. A vast majority of our sister circuits agree, although, as noted above, these courts do not necessarily apply the same definition of "presented." <u>See</u> <u>Simpkins v. D.C. Gov't</u>, 108 F.3d 366, 371 (D.C. Cir. 1997); <u>Rick's Mushroom Serv., Inc. v. United States</u>, 521 F.3d 1338, 1347 (Fed. Cir. 2008); <u>Corte-Real v. United States</u>, 949 F.2d 484, 485-86 (1st Cir. 1991); <u>In re "Agent Orange" Prod. Liab. Litig.</u>, 818 F.2d 194, 198 (2d Cir. 1987); <u>White-Squire v. U.S. Postal Serv.</u>, 592 F.3d 453, 456-57 (3d Cir. 2010); <u>Ahmed v. United States</u>, 30 F.3d 514, 516 (4th Cir. 1994); <u>Price v. United States</u>, 69 F.3d 46, 54 (5th Cir. 1995); <u>Allen v. United States</u>, 517 F.2d 1328, 1329 (6th Cir. 1975) (per curiam); <u>Jerves v. United States</u>, 966 F.2d 517, 519 (9th Cir. 1992); <u>Nero v. Cherokee Nation of Okla.</u>, 892 F.2d 1457, 1463 (10th Cir. 1989); <u>Dalrymple v. United States</u>, 460 F.3d 1318, 1324 (11th Cir. 2006). <u>But see</u> <u>Kanar v. United States</u>, 118 F.3d 527, 529-30 (7th Cir. 1997) (failure to satisfy § 2675(a) did not deprive district court of subject-matter jurisdiction over the FTCA claim).

In recent years, however, the Supreme Court has attempted to "bring some discipline" to the use of the term "jurisdictional." <u>Henderson ex rel. Henderson v. Shinseki</u>, 131 S. Ct. 1197, 1202 (2011). Specifically, the Court has cautioned that a procedural rule carrying a "jurisdictional" label often has drastic litigatory influence and the Court has clarified that the label should not be attached unless a rule is intended to govern "a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." <u>Id.</u> Therefore, to determine whether § 2675(a)'s presentation

---

immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress.").

-17-

requirement is properly classified as "jurisdictional," we look to the Supreme Court's recent holding in <u>Henderson</u> for guidance.

The question in <u>Henderson</u> was whether a former serviceman's failure to file a notice of appeal with the United States Court of Appeals for Veterans Claims within a statutorily established period of time had jurisdictional consequences. <u>Id.</u> at 1200. At the outset, the Court noted that "claim-processing rules"–rules that seek to promote the orderly progress of litigation by requiring that parties take certain steps at certain specified times–are not the types of rules that should be described as jurisdictional. <u>Id.</u> at 1203. But, the question before the Court in <u>Henderson</u> (and in this case) was not easily answerable, as the Court conceded, because Congress is free to attach conditions that fasten a "jurisdictional label" to a rule that the Court would prefer to call a claim-processing procedure. <u>Id.</u> And, while Congress must clearly indicate an intention to impart such a brand, it need not use "magic words" to do so. <u>Id.</u> "'[C]ontext, including [the] Court's interpretation of similar provisions in many years past, is relevant.'" <u>Id.</u> (first alteration in original) (quoting <u>Reed Elsevier, Inc. v. Muchnick</u>, 130 S. Ct. 1237, 1248 (2010)). And, when a long line of the Court's jurisdictional decisions are left undisturbed, Congress is seen to have treated such requirements as jurisdictional and courts should presume that Congress intended to continue to follow that course. <u>Id.</u> (citing <u>John R. Sand & Gravel Co. v. United States</u>, 552 U.S. 130, 133-34 (2008)).

<u>Henderson</u>, by way of example, conceded that in <u>Bowles v. Russell</u>, 551 U.S. 205 (2007), the statutory limitation on the length of an extension of time to file a notice of appeal was seen as jurisdictional and, thus, failure to comply with the limitation could not be excused. <u>Henderson</u>, 131 S. Ct. at 1201-02. The Court noted that <u>Bowles</u>, as in this case, but unlike the Veterans Court procedure at issue in <u>Henderson</u>, was an ordinary civil case originally triable in the United States District Court and appealable to the United States Court of Appeals. <u>Id.</u> at 1203-04. Indeed, said the Court, <u>Bowles</u> concerned an appeal from one court to another court involving

-18-

a "century's worth of precedent and practice in American courts."  Id. at 1203 (quotation omitted).  Thus, Henderson contrasted the ordinary civil litigation in Bowles with the serviceman-friendly system that Congress had created for adjudication of veterans claims.  Id. at 1204-05.  In addition, Henderson also noted that the title given to and the substance of various portions of a legislative act can aid in resolving an ambiguity in legislative text.  Id. at 1205 (citing INS v. Nat'l Center for Immigrants' Rights, Inc., 502 U.S. 183, 189 (1991)).

We now apply the principles and precedents of Henderson to the issues in this case.  In doing so, we strictly abide by the FTCA's language and policy.  Ultimately, we are convinced that although § 2675(a) may resemble a claim-processing rule, Congress has attached a jurisdictional label to the statute.

To begin with, the FTCA's jurisdiction-conferring statute, 28 U.S.C. § 1346(b)(1), makes the "exclusive jurisdiction" of federal district courts over FTCA actions "[s]ubject to the provisions of chapter 171," which houses §§ 2675(a) and 2672.  And, as discussed above, § 2675(a) provides that "[a]n action shall not be instituted upon a claim" in federal district court unless the presentment requirement is satisfied.  Thus, the jurisdiction-conferring language of § 1346(b)(1) indicates that an FTCA claim perfected under § 2675(a) is within the "exclusive jurisdiction" of the federal district courts and prosecutable in the judicial district "where the plaintiff resides or wherein the act or omission complained of occurred."  28 U.S.C. §§ 1346(b)(1), 1402(b).  But, a claim that fails to satisfy § 2675(a)'s requirements remains inchoate, unperfected, and not judicially actionable.

In addition to the relatively clear language of § 1346(b)(1), Supreme Court precedent suggests that § 2675(a) is properly classified as a jurisdictional requirement. In McNeil, the Supreme Court, while not specifically mentioning the word "jurisdiction," recognized that "[t]he most natural reading of [§ 2675(a)] indicates that Congress intended to require *complete* exhaustion of Executive remedies *before*

-19-

*invocation of the judicial process*." 508 U.S. at 112 (emphasis added).  The Court also noted that "at least one objective of [§§ 2675(a) and 2672] was to reduce unnecessary congestion in the courts."  Id. at 112 n.8 (internal quotation omitted).   Not surprisingly, some courts have cited McNeil for the proposition that compliance with § 2675(a) is a jurisdictional prerequisite to suit.  See, e.g., Rasul v. Myers, 563 F.3d 527, 528 n.1 (D.C. Cir. 2009); Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999).

Moreover, for at least seventy years, the Court has recognized that "[t]he United States, as sovereign, is immune from suit save it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  United States v. Sherwood, 312 U.S. 584, 586 (1941); see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity . . . together with a claim falling within the terms of the waiver."). As discussed above, the FTCA is a waiver of the United States's sovereign immunity, and the satisfaction of § 2675(a)'s presentment requirement is no doubt a term of that waiver.  Cf. Kubrick, 444 U.S. at 117 (explaining that 28 U.S.C. § 2401(b)'s two-year statute of limitations for presenting a claim under § 2675(a) is "a condition of" the United States's waiver of sovereign immunity under the FTCA).   Therefore, in accordance with longstanding Supreme Court precedent, § 2675(a) is properly viewed as defining the federal courts' jurisdiction to entertain FTCA suits.  We also note that, since 1966, Congress has left § 2675(a) undisturbed in the face of the above Supreme Court precedent and the fact that nearly all circuits have held that compliance with § 2675(a) is a jurisdictional prerequisite to filing an FTCA action in federal district court.

Finally, unlike the statutory scheme for processing veterans' benefits claims discussed in Henderson, the FTCA is adversarial and cannot be reasonably classified

-20-

as claimant-friendly.[11]   Indeed, the FTCA is replete with mandates, deadlines, requirements and exceptions that reinforce the Act's jurisdictional brand.   See generally 28 U.S.C. §§ 1346(b)(1), 2401-02, 2671-2680.

Under the guidance of Henderson, we conclude that conformity with § 2675(a) is a jurisdictional term of the FTCA's limited waiver of sovereign immunity.   Since there was no such compliance in this case, the district court properly dismissed the suit for want of subject-matter jurisdiction.

## V.

Alternatively, in light of Ms. Mader's recent concession that her appointment as personal representative expired sometime before August 3, 2006, we hold that she does not have standing to assert the wrongful death claim at issue.[12]   See Williams v. Bradshaw, 459 F.3d 846, 848-49 (8th Cir. 2006) (holding that plaintiff, a non-personal representative, did not have standing to assert a wrongful death claim under 42 U.S.C. § 1983 because applicable state law only permitted the personal representative or all of the decedent's heirs to assert such a claim); Andrews v. Neer, 253 F.3d 1052, 1058 (8th Cir. 2001) (holding that decedent's daughter had standing to assert a wrongful death claim under § 1983 because applicable state law permitted the children of the

---

[11]We note that, even under the relatively claimant-friendly Social Security Act, see Henderson, 131 S. Ct. at 1204, federal courts do not have jurisdiction to review social security claims unless "a claim for benefits" has first been "presented" to the Social Security Administration.   Mathews v. Eldridge, 424 U.S. 319, 328 (1976) (discussing the jurisdictional requirements of 42 U.S.C. § 405(g)).

[12]If, as the dissent suggests, Ms. Mader's recent concession undermines her "cause of action" and not her "standing," see post at 39, the result is the same.   It is undisputed that Ms. Mader is not the personal representative of Mr. Mader's estate and "[w]e may affirm the district court's dismissal on any basis supported by the record." Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

-21-

decedent to bring such actions); <u>Hastings v. Wilson</u>, 516 F.3d 1055, 1060-61 (8th Cir. 2008) (holding that plaintiffs lacked statutory standing to bring a civil action for breach of fiduciary duty under ERISA because they were not participants, beneficiaries, or fiduciaries of the ERISA plan, as required by 29 U.S.C. § 1132(a)(2)); <u>see also</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 500 (1975) (The test for prudential standing is "whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."). As discussed above, the FTCA's jurisdiction-conferring and liability language provides that the United States may only be liable "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1); <u>id.</u> § 2674. And, under Nebraska law, *only* a personal representative may file a wrongful death action. <u>See</u> Neb. Rev. Stat. § 30-810; <u>Spradlin</u>, 641 N.W.2d at 637-38.

VI.

We affirm the district court.

BYE, Circuit Judge, dissenting, with whom MURPHY, MELLOY, SMITH and SHEPHERD, Circuit Judges, join.

When a statute contains elements A and B and mentions no other elements, and a regulation arguably promulgated under the same statute expressly insists on element C, the natural inference is that it is the regulation, not the statute, that is a source for requiring C. Through the reasoning which impermissibly blurs the lines between claim presentment and claim settlement, the majority manages to read element C into the statute itself. The significance of this reading is to deprive the plaintiff in this and many future cases of the remedy under the Federal Tort Claims Act (FTCA). Another net effect of this interpretation is to contract the scope of this court's jurisdiction,

-22-

something a court is not allowed to do.  Kanar v. United States, 118 F.3d 527, 530 (7th Cir. 1997).  Because I disagree with the majority's assumptions used to elevate the evidence-of-authority requirement to a jurisdictional precondition to filing a suit, I respectfully dissent.

## I.

My colleagues in the majority started off on the wrong foot by concluding the burden of furnishing evidence of one's representative authority comes directly from the FTCA.  I see the genesis of this requirement in the Department of Justice's (DOJ) regulation outlining requirements of presentment for the purposes of exhausting executive remedies under section 2675 of the Act.  That regulation, entitled "Administrative claim; when presented," expressly calls for "evidence of [the signator's] authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative."  28 C.F.R. § 14.2(a).  It is unsurprising, given the clarity of this language, that other courts which have considered the pedigree of the evidence-of-authority requirement have traced it to the DOJ regulation.  Kanar, 118 F.3d at 531; Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994); Knapp v. United States, 844 F.2d 376, 379-80 (6th Cir. 1988); Warren v. U.S. Dep't of Interior Bureau of Land Mgmt., 724 F.2d 776, 778 (9th Cir. 1984); cf. Avila v. INS, 731 F.2d 616, 619 (9th Cir. 1984) (tracing the evidence-of-authority requirement to 28 C.F.R. § 14.3(e), which contained the evidence-of-authority language prior to 1987); Transco Leasing Corp. v. United States, 896 F.2d 1435, 1444 (5th Cir. 1990) (same).

The precision of that regulation stands in stark contrast with the generic language in sections 2675, 2672, or 1346 of the FTCA, which make no mention of the evidence of authority.  Section 1346, used by the majority to establish the jurisdictional nature of claim presentation under the FTCA, simply confers upon federal courts exclusive jurisdiction over claims under the FTCA, "[s]ubject to the

provisions of chapter 171 of this title."  28 U.S.C. § 1346(b)(1).  Section 2675, comprised within chapter 171, establishes the general requirement of presenting a claim "to the appropriate Federal agency" and suspends the claimant's right to file a complaint in court until either the claim is "denied by the agency in writing and sent by certified or registered mail" or the agency fails to make a "final disposition of a claim within six months after it is filed."  28 U.S.C. § 2675.  The text of section 2672, likewise a part of chapter 171, is similarly unilluminating.  It merely empowers federal agencies to settle the FTCA claims "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 2672.  Even with the most charitable reading of these sections, I cannot discern in them any basis for requiring "evidence of a personal representative's authority to act on behalf of a claim's beneficiaries."  On a textual level, the majority's suggestion that 28 C.F.R. § 14.2(a) simply parrots what is already "inherent" in section 2675 strikes me as disingenuous.

The majority's reading of section 2675 also breaks a new path in law and puts this court at odds with other circuits.  To my knowledge, no other court has read section 2675 to require a proof of one's authority to represent the claimant.  Rather, the judicial consensus is that section 2675 mandates only "minimal notice" consisting of "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim."  GAF Corp. v. United States, 818 F.2d 901, 905 (D.C. Cir. 1987); see also Ahmed, 30 F.3d at 516-17; Santiago-Ramirez v. Sec. of the Dep't of Defense, 984 F.2d 16, 19 (1st Cir. 1993); Bradley v. United States, 951 F.2d 268, 270 (10th Cir. 1991); Tidd v. United States, 786 F.2d 1565, 1567-68 (11th Cir. 1986); Johnson ex rel. Johnson v. United States, 788 F.2d 845, 848-49 (2d Cir. 1986), overruled on other grounds by Sheridan v. United States, 487 U.S. 392 (1988); Warren, 724 F.2d at 780; Douglas v. United

-24-

States, 658 F.2d 445, 447 (6th Cir. 1981); Adams v. United States, 615 F.2d 284, 289-90 (5th Cir. 1980).[13]   The requirement of the written statement describing the injury

_____

[13] In this circuit, the two key decisions interpreting claim presentation in the context of section 2675 of the FTCA are Lunsford v. United States, 570 F.2d 221 (8th Cir. 1977), and Farmers State Savings Bank v. Farmers Home Administration, 866 F.2d 276 (8th Cir. 1989).  In the earlier of the two, Lunsford, the court considered whether claims brought on behalf of unnamed class members passed muster of presentment under section 2675.  Having concluded the claims of unnamed class members were unidentifiable, did not state a sum certain, and "none of the named plaintiffs asserted authority to present claims on behalf of the unnamed class members," the court dismissed the claims for want of exhaustion.  Lunsford, 570 F.2d at 225.  Notably, the named class members were allowed to proceed with their individual causes of action.  570 F.2d at 224.

In a more recent decision in Farmers State, this court reversed dismissal of the plaintiff's case for failure to exhaust administrative remedies under section 2675(a) where the plaintiff "identified itself and clearly detailed the bases for its claims [and] specified that $80,000 was the amount it sought to recover."  866 F.2d at 277. Farmers State characterized this circuit as being among the majority of courts in the minimal-notice camp, and formulated the presentment test to require a claimant to "provide[] in writing (1) sufficient information for the agency to investigate the claims, and (2) the amount of damages sought."  866 F.2d at 277.  Inviting some measure of confusion, Farmers State cited Lunsford with approval.

Considering this legal landscape, we reject the majority's charge that "the panel majority should have applied Lunsford's first-in-time interpretation of § 2675(a)."  See ante at 8.  To begin with,  Lunsford was unique in that it was "an attempt to bring a class action under the FTCA."  Knapp, 844 F.2d at 380.  A common issue that arises in class actions under the FTCA is whether "each claimant must submit an independent and separate claim to the appropriate administrative agency" or if the named class members can satisfy these requirements on behalf of the unnamed members.  Pennsylvania v. Nat'l Ass'n of Flood Insurers, 520 F.2d 11, 23-24 (3d Cir. 1975), overruled on other grounds by Pennsylvania v. Porter, 659 F.2d 306 (3d Cir. 1981).  This circuit appears to have opted for the separate and individual satisfaction approach, but this choice is of no consequence to this individual-plaintiff case.

-25-

is self-explanatory: it comes from the language of section 2675(a) requiring that the claimant not institute an action in court "unless [he] shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency *in writing*." 28 U.S.C. § 2675(a) (emphasis added); <u>see also</u> 28 U.S.C. § 2401(b) (establishing a statute of limitations for actions under the FTCA, pursuant to which such actions are barred "unless it is presented in writing to the appropriate Federal agency within two years"). The sum-certain requirement also comes from the language of section 2675, which prohibits claimants from bringing an action "for any sum in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b); <u>see</u> <u>White-Squire v. U.S. Postal Serv.</u>, 592 F.3d 453, 457-58 (3d Cir. 2010) (characterizing the sum-certain requirement as jurisdictional because it is mentioned in section 2675(b), which is, in turn, incorporated into a jurisdiction grant for the FTCA claims contained in section 1346); <u>Blair v. IRS</u>, 304 F.3d 861, 865 (9th Cir. 2002) (same). Not so with the evidence of authority, which is not mentioned anywhere in the statute. Even the one circuit traditionally cited for rejecting the minimal notice approach to exhaustion embraced by the majority of the courts – the Seventh Circuit – did not treat section 2675 as requiring the evidence of authority. <u>Kanar</u>, 118 F.3d at 530; <u>see also</u> <u>Charlton v. United States</u>, 743 F.2d 557, 559-60 (7th Cir. 1984). Instead, it acknowledged the requirement came directly from the DOJ regulation. <u>Kanar</u>, 118 F.3d at 529.

---

Even if <u>Lunsford</u> were relevant, it was not binding on this case. The <u>Lunsford</u> court required all class members to present their claims either personally or through an authorized representative, and concluded the absent class members did not satisfy even the irreducible requirements of presentment – having an identifiable claimant and requesting a sum certain – under either route. 570 F.2d at 226-27. Thus, to the extent <u>Lunsford</u> found the members' claims deficient for failure to present the evidence of authority, this conclusion was peripheral to the court's core holding and therefore not binding on future panels. <u>United States v. Northshore Mining Co.</u>, 576 F.3d 840, 847 n.4 (8th Cir. 2009).

-26-

To compensate for the absence of textual support in the statute, the majority stresses the close relationship between the concepts of presentment and settlement to engraft section 2672 standards onto section 2675. The two sections were added to the FTCA in 1966 "as part of a package of amendments designed to facilitate out-of-court settlement of claims" and, true enough, the "presentment requirement of [s]ection 2675(a) was a key element in the new procedure for claims resolution." GAF Corp., 818 F.2d at 905. But while sections 2675 and 2672 should be considered in tandem, they are not perfectly coextensive, for they serve different goals. Section 2675 requires an FTCA claimant to give the agency an opportunity to consider a claim before the claimant takes it to court, McNeil v. United States, 508 U.S. 106, 111 n.7 (1993) (describing the intent of the 1966 amendments as merely to "make it possible for the claim first to be considered by the agency"); section 2672 merely authorizes the government to enter into a settlement *if* the claimant is willing to accept it.

"Although many claimants will rationally elect to settle their claims, Congress clearly did not deem settlement mandatory." Adams, 615 F.2d at 291. Section 2675 allows the claimant to file a complaint in federal court at the expiration of six months even in the absence of the agency response. See S. Rep. No. 89-1327, 89th Cong., 2d Sess. 2, reprinted in 1966 USCCAN 2515, 2518-19 (1966) (explaining that, "even though th[e] 6-month period may prove insufficient in some instances [to enter into the ultimate settlement], the committee does not believe that this period ought to be enlarged to attempt to insure time for final decision on all claims"). Nothing in sections 2675 or 2672 affects the truism that agencies will not settle the bulk of the claims before them, particularly where such claims involve complex issues of liability and damages. Id. at 2520 (acknowledging many cases alleging medical malpractice, drug and products liability, or arising out of aviation accidents are not amenable to settlement and will continue to be litigated). And nothing in those sections compels the claimant to accept the agency's settlement, no matter how generous. Adams, 615 F.2d at 290 (rejecting "the erroneous conclusion that claimants must settle with the

-27-

relevant federal agency, if the agency so desires, and must provide that agency with any and all information requested in order to preserve their right to sue"). In the end, the settlement-oriented framework of the FTCA was only meant to "encourage claimants and their attorneys to make use of this new administrative procedure," S. Rep. No. 89-1327, at 2524 (speaking about the provision raising allowable attorney's fees), and "[e]ncouragement would hardly have been thought necessary if the administrative procedures under section 2672 were mandatory or were, through section 2675, a jurisdictional prerequisite to suit." Adams, 615 F.2d at 290 n.11.

Usurping the duties reserved to Congress, the majority concludes that the proof-of-authority requirement "naturally follows" from section 2672's settlement authorization and is "totally essential to meaningful agency consideration." See ante at 9. Absent the evidence of one's authority to represent the claimant, the majority maintains, "agencies simply cannot meaningfully consider the FTCA claims with an eye towards settlement." See ante at 13-14. But what is "totally essential" to settlement consideration varies in the proverbial eye of the beholder, and the majority's standard in this regard turns out to be more demanding than that of virtually any other circuit.

I have a different view of what is essential to the agency's realistic assessment of settlement possibilities. Like the vast majority of the courts, I would subscribe to "an eminently pragmatic" test of presentment focusing on whether the agency received "notice that the agency should investigate the possibility of particular (potentially tortious) conduct and includes a specification of damages sought." Ramirez-Carlo v. United States, 496 F.3d 41, 46-47 (1st Cir. 2007). Such notice is sufficient to "activate the [settlement] machinery," and the statute requires no more. See Kanar, 117 F.3d at 531 (analogizing claim presentment under the FTCA to the formalities prescribed for tax refund claims where, once a taxpayer "activate[s] the refund machinery," he is "not defeated by foibles in the refund application") (citing United States v. Kales, 314 U.S. 186, 194 (1941), and United States v. Memphis Cotton Oil Co., 288 U.S. 62, 67 (1933)). Section 2675 does not "allow an agency to insist on

proof of a claim to its satisfaction before the claimant becomes entitled to a day in court." Avery v. United States, 680 F.2d 608, 611 (9th Cir. 1982). Nor should section 2675 require a claimant to reveal potential defenses to a prospective defendant. Even before the 1966 amendments, agencies were expected to conduct their own independent investigations of presented claims, and the agencies' investigative duties did not change with the adoption of sections 2675 and 2672. GAF Corp., 818 F.2d at 919 n.105.

Eventually, when and if the parties take a real interest in the settlement, but before making a full-fledged commitment, the agency will be well advised to obtain the evidence of the claimant's authority to present a claim, among many other evidentiary items. The agency has authority to request these items by virtue of the DOJ's regulations in 28 C.F.R. § 14.1-14.11. The government concedes it takes advantage of this authority frequently, for it is a rare claim that the agency can settle on the basis of Standard Form 95 alone. It also concedes it cannot insist on production of evidentiary materials listed in section 14.4 as a prerequisite to filing a suit. It argues, however, that the evidence of authority is categorically different from the "substantiation" evidence listed in section 14.4.

I fail to see the suggested distinction. Supplying the evidence of authority is as much a part of "establish[ing a claim] by proof or competent evidence" – a dictionary definition of substantiation, see Random House Webster's College Dictionary (2d ed. 1999) – as bills and physicians' reports verifying the extent of the claimant's asserted injuries, full names of decedent's survivors entitled to recovery (particularly relevant here), proof of ownership of the property, or other quintessential substantiation items listed in 28 C.F.R. § 14.4. The obligation to produce any of these items should not spring into action until the parties are serious about settling the claim, particularly where one's failure to produce them could prejudice the claimant's ability to bring an action in court. Santiago-Ramirez, 984 F.2d at 19 ("Only after the

process of settlement has been initiated does the additional information required by the regulations become relevant.").

The majority's overzealous adherence to the FTCA's legislative preference toward the settlement of tort claims against the United States sacrifices another stated goal of the Act: "to provide 'fair and equitable treatment of private individuals and claimants when they deal with the Government or are involved in litigation with their Government.'" Id. at 18 (quoting S. Rep. No. 89-1327, at 2516). As the First Circuit has observed, "Congress manifested no interest whatsoever in restricting claimants' rights under the Federal Tort Claims Act or in restricting their access to the courts. To the contrary, Congress identified private litigants as the primary beneficiaries of the amendments." GAF Corp., 818 F.2d at 917; see also Exec. Jet Aviation, Inc. v. United States, 507 F.2d 508, 515 (6th Cir. 1974) ("The purpose of the amendment was not to make recovery from the Government technically more difficult."). The legislative history also reveals congressional intent to model the exhaustion mechanism under the FTCA after state statutes permitting suits against municipalities, which Congress understood to require only minimum notice. Avery, 680 F.2d at 610-11 (citing S. Rep. No. 89-1327, at 2517). Just as these statutes permit exhaustion only to the extent necessary for a municipality to investigate the claim, this court should interpret section 2675 of the FTCA to require the minimum notice to enable the agency's own investigation. See Warren, 724 F.2d at 779 (relying on congressional intent to mirror statutes governing tort claims against municipalities in interpreting section 2675 of the FTCA).

Through its expansive reading of section 2675 and its treatment of the section as jurisdictional, my colleagues are adding one more item to the "checklist which, when not fully observed, permits the termination of claims regardless of their merits." Erxleben v. United States, 668 F.2d 268, 273 (7th Cir. 1981) (quoting Koziol v. United States, 507 F. Supp. 87, 91 (N.D. Ill. 1981)). By so redefining section 2675, the majority runs afoul of two established principles of statutory construction. First,

-30-

it neglects the interpretive maxim that jurisdictional statutes are to be construed "with precision and with fidelity to the terms by which Congress has expressed its wishes." Cheng Fan Kwok v. INS, 392 U.S. 206, 212 (1968). Second, it undermines the principle that "when the federal government waives its immunity, the scope of the waiver is construed to achieve its remedial purpose." Blair, 304 F.3d at 867-68. The net effect is that the majority's interpretation runs counter to the overarching purpose of the FTCA, which is to provide compensation to those injured by the government's torts. Richards v. United States, 369 U.S. 1, 6 (1962).

The underlying facts demonstrate why the skeletal notice comports with the statutory scheme Congress put in place through the 1966 amendments. The Department of Veterans Affairs received Standard Form 95 filled out by Nancy Mader's counsel on behalf of Nancy Mader, who claimed to be a "Personal Representative of the Estate of Robert L. Mader, Deceased." In the form, the decedent's widow informed the agency of the events giving rise to her claim and estimated the value of her claim at $750,000. As is typical for cases alleging medical negligence in the context of a wrongful death action, Mader's case presented complex issues on nearly every element of the claim. Congress predicted that, "unlike routine cases, medical malpractice cases 'involve difficult legal and damage questions,' . . . that are not always amenable to settlement." Adams, 615 F.2d at 290-91 (citing S. Rep. No. 89-1327, at 2518, 2520). Mader's claim was no exception, and the agency proceeded to deny it on the merits.

Although the agency requested verification for Mader's assertion she is a personal representative of her husband's estate, the absence of such verification did not hinder the agency's ability to evaluate the merits of the claim and rule out the settlement route. In this respect, Mader's case is typical, since the claimant's failure to produce the evidence of authority hardly prevents the agency from investigating the claim and attempting a compromise. Executive Jet Aviation, Inc., 507 F.2d at 515 (expressing skepticism about the likelihood of settling a complex claim, but noting the

-31-

agency is in no way "prevented from attempting a compromise simply because the insurers did not join in [the insureds'] administrative claim"). "'No harm, no foul' is a maxim of the law of torts [which] is equally apt in administering the apparatus for seeking compensation after a tort." Kanar, 118 F.3d at 531. "By denying [her] claims on the merits, the [Department] demonstrated that they had sufficient notice to initiate investigation." Warren, 724 F.2d at 779.

To be sure, Mader's case is somewhat peculiar because it was filed on the last day before the expiration of the statute of limitations. By operation of a Nebraska statute, Mader's authority to act as a personal representative of her husband's estate lapsed on July 8, 2006, less than a month before she filed her claim with the Department of Veterans Affairs. See Neb. Rev. Stat. § 30-24,117(b). Under another Nebraska statute, see Neb. Stat. Ann. § 30-24,122, Mader could have applied for reappointment as a personal representative in time for commencement of proceedings in federal court, but she did not. And by the time she filed her lawsuit on the last day of the statute of limitations period, she ran out of time to correct the deficiency.

It is hard to feel badly for this claimant and particularly her counsel, for "attorneys who wait until the last day of a statute-of-limitations period to file a complaint have only themselves to blame when Murphy's Law comes knocking." Kellum v. Comm'r, 295 F. App'x 47, 52 (6th Cir. 2008). But given the outcome the majority reaches today, Murphy's Law will come knocking on the doors of less culpable claimants who have the misfortune of residing in the Eighth Circuit and fail to comply with the evidence-of-authority requirement by reason of not reading the regulations. While passing section 2675, Congress expressly rejected the idea that complying with the requirement of presentment will necessitate assistance of a lawyer. Warren, 724 F.2d at 788 (Sneed, J., dissenting) (quoting Improvement of Procedures in Claims Settlement and Gov't Litig.: Hearings on H.R. 13650, 13651, 13652, and 14182 Before Subcomm. No. 2 of the House Comm. on the Judiciary, 89th Cong., 2d Sess. 13 (1966) (statement by John W. Douglas, Assistant Attorney General)).

-32-

Considering the "premium placed upon the careful observance of the settlement regulations" by the court's ruling today, however, claimants will be well advised to hire counsel to maximize their chances of preserving their right to sue. Id. at 779 n.6. Courts will bear their part of the burden too, becoming bogged down in "ancillary matters of fact whenever the agency rejected a claim as incomplete." Avery, 680 F.2d at 611. Whatever efficiencies can be gained by the agencies in obtaining the evidence of authority at the outset will be lost by the inefficiencies in the use of judicial resources and, more important, unfairness of depriving eligible claimants of their right to recovery. See Henderson ex rel. Henderson v. Shinseki,131 S.Ct. 1197, 1202 (2011) (expressing a concern that "[j]urisdictional rules may . . . result in the waste of judicial resources and may unfairly prejudice litigants").

## II.

This is not to say the regulation requiring a claimant to produce the evidence as to its authority to pursue the claim, 28 C.F.R. § 14.2(a), is entirely inconsequential. Its effect is determined by whether it is merely mandatory or jurisdictional in nature, to borrow the juxtaposition used recently by the Supreme Court. See Henderson,131 S.Ct. at 1202-03. If section 14.2(a) falls within the latter category, this court does not have subject-matter jurisdiction to hear Mader's claim, and the district court acted properly in dismissing the action under Federal Rule of Civil Procedure 12(b)(1). See Barnett v. Okeechobee Hosp., 283 F.3d 1232, 1237-38 (11th Cir. 2002). If, however, section 14.2(a) is classified as mandatory but not jurisdictional (alternatively labeled as "claim-processing"), the district court had subject-matter jurisdiction over Mader's action, and its dismissal on Rule 12(b)(1) grounds was in error. Henderson, 131 S.Ct. at 1202-03. In that latter scenario, the agency's remedy would be to assert non-compliance with the DOJ's presentment regulation as an affirmative defense under Federal Rule of Civil Procedure 12(b)(6). See Mosely v. Bd. of Educ. of City of Chicago, 434 F.3d 527, 532-33 (7th Cir. 2006). If the rule is classified as non-

-33-

jurisdictional, compliance with it can be forfeited if not timely asserted.  Eberhart v. United States, 546 U.S. 12, 14 (2005).

In deciding whether the presentment regulation in section 14.2(a) is claim-processing or jurisdictional, I am persuaded by the reasoning of other courts to consider the issue.  With the arguable exception of this court in Lunsford and the Third Circuit in Pennsylvania v. National Ass'n of Flood Insurers, 520 F.2d 11 (3d Cir. 1975), other circuits have characterized the regulation in section 14.2(a) as non-jurisdictional.  See Santiago-Ramirez, 984 F.2d at 19; Kanar, 118 F.3d at 531; GAF Corp., 818 F.2d at 920; Warren, 724 F.2d at 780; Douglas, 658 F.2d at 447-48; Adams, 615 F.2d at 291-92 n.15.  They had good reasons for doing so.  First, Congress did not authorize the Attorney General to promulgate any regulations under section 2675 of the FTCA.  The DOJ purportedly drew its authority from section 2672 of the Act, which empowers the Attorney General to promulgate settlement-related regulations.  But, as noted above, the purposes of section 2672 are distinct from the purposes of section 2675.  Authority to define requirements for a final settlement does not necessarily translate into authority to define presentment for jurisdictional purposes in the same way as an offer to settle does not translate into an edict to accept it.

Second, an administrative agency is not at liberty to contract or expand the scope of the courts' jurisdiction; only Congress can do so.  Kontrick v. Ryan, 540 U.S. 443, 452 (2004) ("Only Congress may determine a lower federal court's subject-matter jurisdiction."); cf. Harris v. U.S. R.R. Ret. Bd., 198 F.3d 139, 142 (4th Cir. 1999) ("This court may not base its jurisdictional predicate on the authority of an administrative agency instead of on the authority of the United States Congress."). "There is no evidence that Congress wished to restrict access to the courts in cases where settlement was not possible by creating jurisdictional obstacles during the settlement process."  Warren, 724 F.2d at 779 n.6.  Because the FTCA lacks the congressional blessing to alter the extent of the courts' jurisdiction by way of

-34-

regulations, the DOJ's actions in extending section 14.2 to section 2675 are a nullity for the purposes of interpreting exhaustion under section 2675.

It is true Congress authorized the Attorney General to establish procedures to be observed in the event of a settlement, and the DOJ did so in 28 C.F.R. § 14.1-14.11. The government does not argue that all of these requirements can be used to divest the court of jurisdiction; it asserts that only section 14.2, entitled "Administrative claim; when presented," is of jurisdictional significance. Yet it struggles to articulate the difference between that section and, for example, section 14.4, entitled, "Administrative claims; evidence and information to be submitted." Both of these regulations are promulgated on the basis of the same congressional grant of authority contained in section 2672. Congress did not endow the Attorney General with any more authority to promulgate section 14.2 than it did to pass section 14.4. It would be thus improper to accord greater significance to requirements in section 14.2 than to requirements in section 14.4.

Third, the regulation at issue looks, smells, and tastes like a classic claim-processing rule. The FTCA itself does not call on the claimant to present particular evidentiary materials in order to discharge his obligations under section 2675, and the evidentiary obligations memorialized in the regulations are not connected to the concept of jurisdiction even by virtue of section 1346. See Kontrick, 540 U.S. at 448 (referencing the absence of any time limits from the statute as a reason for concluding the time requirement established through the court rule was not jurisdictional). There is no sign, much less a "clear indication," as to Congress requiring the rule to be jurisdictional. Henderson, 131 S.Ct. at 1205. The proposed treatment of the rule as affecting the courts' jurisdiction has been repeatedly rejected by the courts. Cf. Bowles v. Russell, 551 U.S. 205, 209-11 (2007) (affirming jurisdictional treatment of the time limitation for filing a notice of appeal contained in 28 U.S.C. § 2107(a) based on a long line of the Supreme Court decisions left undisturbed by Congress). Together, these characteristics lead me to conclude that, like other regulations

promulgated under section 2762, section 14.2 establishes a claim-processing rule merely "seek[ing] to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Henderson, 131 S.Ct. at 1203.

III.

Finally, I write to address the last point raised by the majority sua sponte – Mader's lack of standing. After an exhaustive discussion and the determinative ruling on the evidence-of-authority subject, the majority invokes the prudential element of standing to conclude, in the alternative, Mader does not have standing. This invocation is ironic, for the whole purpose of prudential standing, as explained by the Supreme Court, is to absolve courts from having to decide "abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004). Far from avoiding the issue, the majority devotes ninety-five percent of its discussion to the very subject it deems abstract and unnecessary to address.

Considered on the merits, the standing issue is a red herring. In concluding Mader lacks standing, the majority adopts a myopic view of this complex term. In general, "standing is a question of whether a plaintiff is sufficiently adversary to a defendant to create an Art. III case or controversy, or at least to overcome prudential limitations on federal-court jurisdiction." Davis v. Passman, 442 U.S. 228, 239 n.18 (1979). The doctrine of prudential standing, upon which the majority relies, comprises "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Allen v. Wright, 468 U.S.

-36-

737, 751 (1984).  Although it is not clear which of these three rules the majority invokes, it is safe to say its ruling does not rest on the prohibition against filing generalized grievances.

Out of the two remaining rules within the prudential standing umbrella, the first ensures the plaintiff "assert[s] his own legal rights and interests, and [does not] rest his claim to relief on the legal rights or interests of third parties."  Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 80 (1978).  As the decedent's widow and thus a direct beneficiary of a wrongful death action under Nebraska law, Mader undoubtedly satisfies this requirement.  See Neb. Stat. Ann. § 30-810 ("Every [wrongful death] action . . . shall be brought by and in the name of the person's personal representative for the exclusive benefit of the widow or widower and next of kin.").  The Nebraska Supreme Court explained the cause of action in the state's wrongful death statute inures solely to the widow or the next of kin.  Corona de Camargo v. Schon, 776 N.W.2d 1, 9 (Neb. 2009); Rhein v. Caterpillar Tractor Co., 314 N.W.2d 19, 22 (Neb. 1982).  Albeit authorized to bring a claim in court, a personal representative who is neither a widow nor the next of kin does not share in the proceeds of recovery at all.  Perez v. Stern, 777 N.W.2d 545, 554 (Neb. 2010) ("The personal representative's sole task is to distribute any recovery in accordance with the statute, to the discrete and identifiable class of beneficiaries that the Legislature has specifically designated.").  Another critical point under the Nebraska wrongful death law is that the statutory beneficiary is reimbursed for his own loss, as opposed to the decedent's damages.  Nelson v. Dolan, 434 N.W.2d 25, 29 (Neb. 1989).  It is therefore hard to imagine a person with a more direct stake in the recovery than a decedent's widow.

The remaining prudential standing test looks at whether the plaintiff's grievance "arguably falls within the zone of interests protected or regulated by the statutory provision invoked in the suit."  Rosebud Sioux Tribe v. McDivitt, 286 F.3d 1031, 1036 (8th Cir. 2002).  The application of this test "varies according to the provisions

-37-

of law at issue." <u>Bennett v. Spear</u>, 520 U.S. 154, 163 (1997).  The statutory provision
invoked in this suit is the FTCA, which allows the plaintiff to recover for

> *injury or loss of property, or personal injury or death caused by the*
> *negligent or wrongful act* or omission of any employee of the
> Government while acting within the scope of his office or employment,
> under circumstances where the United States, if a private person, would
> be liable to the claimant in accordance with the law of the place where
> the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added).

To the extent state law is incorporated into section 1346 analysis, <u>see</u> <u>Devlin</u>
<u>v. United States</u>, 352 F.3d 525, 531-34 (2d Cir. 2003) (debating whether a phrase
"injury or loss of property," as used in section 1346 of the FTCA, should be
interpreted as a matter of federal common law or state law), the Nebraska wrongful
death statute allows Mader to recover for the loss she "sustained after [her husband's]
death by reason of being deprived of what [she] would have received from [her
husband] from the date of his . . . death, had he . . . lived out a full life expectancy."
<u>Corona de Camargo</u>, 776 N.W.2d at 7.  Indeed, the interests of the beneficiaries under
the Nebraska statute are so direct that even a lawyer hired by a personal representative
to pursue a wrongful death action owes an independent duty to these beneficiaries,
notwithstanding a lack of privity between the lawyer and the beneficiaries.  <u>Perez</u>, 777
N.W.2d at 550-52.  Since the wrongful death statute so closely guards the interests of
widows and next of kin, Mader's grievance more than "arguably" falls within the zone
of interests protected by section 1346.  <u>Cf.</u> <u>Van Fossen v. United States</u>, 430 F. Supp.
1017, 1021 (N.D. Cal. 1977) (concluding it would be "specious to argue that persons
who are named as statutory beneficiaries with a right to an accounting from their
personal representatives are not legally entitled to assert a claim for wrongful death"
to exhaust their claims under section 2675); <u>see also</u> <u>Jones v. Prince George's County,</u>
<u>Maryland</u>, 348 F.3d 1014, 1017-18 (D.C. Cir. 2003) (allowing intervention of the

-38-

beneficiary in a wrongful death suit brought by a personal representative of the decedent's estate and rejecting the argument as to state law restricting the right to commence an action to a personal representative deprived the beneficiary-intervenor of standing).

The analytical mistake in the majority's reasoning lies in conflating the standards for evaluating standing with those for measuring sufficiency of the cause of action.  The Supreme Court has urged lower courts to keep "standing" and "cause of action" conceptually distinct.  Bond v. United States, 131 S.Ct. 2355, 2362 (2011).  The former concept goes to justiciability, while the latter affects merits.  Id.  Whatever this court has held with respect to section 1983 actions, see Erlin v. United States, 364 F.3d 1127, 1132 (9th Cir. 2004) (emphasizing differences between the FTCA and section 1983),[14] the deficiencies in Mader's status as a personal representative of her deceased husband's estate relate to the classic cause-of-action inquiry "whether a particular plaintiff is a member of the class of litigants that may, as a matter of law, appropriately invoke the power of the court."  Davis, 442 U.S. at 239 n.18.  These deficiencies do not undermine Mader's "sufficiently adversary" interest in recovery as the most likely beneficiary under the Nebraska wrongful death statute.  Id.  Accordingly, any flaws in Mader's appointment as a personal representative must be

---

[14]In addition, the majority's reliance on Andrews v. Neer, 253 F.3d 1052 (8th Cir. 2001) is unjustified because of the differences between the Nebraska wrongful death statute involved here and the Missouri wrongful death statute implicated in Andrews.  Unlike the Nebraska statute, the Missouri wrongful death statute vests the right to bring an action directly in the hands of its beneficiaries and, significantly for our purposes, to the exclusion of the decedent's estate.  Mo. Rev. Stat. § 537.080; see Sullivan v. Carlisle, 851 S.W.2d 510, 513 (Mo. 1993).  In contrast to the Nebraska statute, therefore, under the Missouri statute the right to sue is not divorced from the right to recover.  Finally, the majority's citation to an ERISA case, Hastings v. Wilson, 516 F.3d 1055 (8th Cir. 2008), is unavailing because the plaintiffs in that case simply failed to satisfy the standing requirement that the complaint fall within the zone of interests protected by the statute.  As I have explained earlier, this charge does not fairly apply to this case.

-39-

timely asserted by the government in a motion under Rule 12(b)(6), and not sua sponte by the appellate court at this late juncture in the judicial proceedings.  <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. at 506; <u>see also</u> <u>Day v. McDonough</u>, 547 U.S. 198, 217 (2006) ("Ordinary civil practice does not allow a forfeited affirmative defense whose underlying facts were not developed below to be raised for the first time on appeal.").

IV.

For the foregoing reasons, I respectfully dissent.

_____